BLUE CROSS OF NORTHEAST OHIO, APPELLEE, *v.* FURINO ET AL., APPELLANTS.

(Nos. 46298 and 47068—Decided January 9, 1984.)

*Ms. Carol M. Lamm,* for appellee.
*Mr. Rudolph J. Geraci,* for appellants.

DAY, P.J. Defendant-appellant Paul Strazzanti appeals the judgment of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of the plaintiff-appellee Blue Cross of Northeast Ohio ("BCNO") in the amount of $810. Defendants-appellants Lazzaro Furino and his wife, Grace Furino, appeal the judgment of the court of common pleas for BCNO in the amount of $3,046.95. The cases were consolidated on appeal. For the reasons adduced below, the judgments are affirmed.

## I

The plaintiff is a medical insurer incorporated under R.C. Chapter 1739. The defendants are insured under health insurance contracts written by the plaintiff.[1] Defendants Lazzaro Furino and Paul Strazzanti are also members in Commission House Drivers Union, Local 400.. As such members they participate in the Local 400 Food Terminal Employees Welfare Fund ("union fund") which provides for hospital benefits in certain situations.

Defendant Lazzaro Furino and Strazzanti's child were admitted to the hospital on four occasions during which the defendants were covered by both BCNO and the union fund. On May 22, 1980, Furino was admitted to Shaker Medical Center Hospital and incurred medical expenses of $2,027.55. The plaintiff paid those expenses. Furino filed a claim with the union fund and received benefits in the amount of $1,227.55 under the union fund health program.[2] On March 22, 1979 and January 28, 1980, Furino was again

hospitalized. The plaintiff paid his medical expenses of $2,357.00 and $1,289.30, respectively. On January 23, 1978, Paul Strazzanti's child was admitted to Marymount Hospital where he incurred expenses of $1,457.88. The plaintiff paid those expenses. Except with respect to the May 22, 1980 admission, no claims were filed by the defendants with the union fund.[3]

## II

The plaintiff filed "complaints for money and/or specific performance" against the defendants seeking to recover from them the amount paid Lazzaro Furino from the union fund ($1,227.55) plus the sums collectible had the defendants made claims to the union fund (an additional $1,819.30 to Furino and $810 to Strazzanti).

In Strazzanti's case, the plaintiff moved for summary judgment which was granted in an entry journalized May 18, 1983. In the Furinos' case, briefs and stipulations of fact were filed with the court, and an opinion and judgment was rendered for the plaintiff on December 13, 1982. In response to a motion by the Furinos, separate findings of fact and conclusions of law were prepared on January 11, 1983. Conclusion of law number five stated:

"The defendants are obliged to reimburse plaintiff in the amounts advanced by plaintiff for payments of defendants' medical expenses to the extent that Local 400's Health and Welfare Plan in fact paid or should have paid if application by defendants to Local 400 had been timely made."

---

[1] Through her employer, Grace Furino is enrolled in a group plan which is a subscriber of BCNO. Her husband is entitled to coverage under the plan. Paul Strazzanti is a subscriber of BCNO through his enrollment in a non-group, direct pay plan.

[2] The union fund program provides that

an eligible participant receive $100 per day for each day of hospitalization and certain other dollar amounts for special hospital services up to a maximum of $450.

[3] See Appendix A for a summary of the arithmetic accounting for the judgments in the cases.

The defendants assign two errors in their consolidated appeal:

## Assignment of Error No. I

"The trial court errored [sic] in ruling that Blue Cross of Northeast Ohio is entitled to recover under their coordination of benefits clause when the defendant-appellant's [sic] do not receive benefits under the Local 400 Health and Welfare Plan."

## Assignment of Error No. II

"The trial court errored [sic] in ruling that defendant-appellants failed to cooperate and/or assist Blue Cross of Northeast Ohio in determining Blue Cross of Northeast Ohio's obligation to pay under Blue Cross of Northeast Ohio coordination of benefits rider."

## III

The right of the plaintiff to recover the amounts awarded by the trial court derives from its hospitalization contracts with the defendants. The pertinent provisions of those contracts are located in the "coordination of benefits" clauses ("COB"). Those provisions were devised to prevent duplication of insurance benefits and to establish priority of obligations or proportionate shares owed among insurers where more than one insurer covers the same risk. See *American Family Life Assurance Co. v. Blue Cross of Florida, Inc.* (C.A. 5, 1973), 486 F. 2d 225, 226; *Starks v. Hospital Service Plan of N.J., Inc.* (N.J. Super. A.D. 1981), 440 A. 2d 1353, 1354-1355, 1358. The validity and enforceability of a COB provision is beyond question:

"* * * [s]o long as its operation does not impinge upon a beneficiary's right to and expectation of full coverage but rather is employed only to prevent double recovery and thereby to reduce premiums." *Starks, supra,* at 1358. See, also, *Blue Cross of Northeast Ohio v. Anton Jatsyshyn et al.* (July 3, 1980),

Cuyahoga App. Nos. 40047 through 40086, unreported.

This court has previously determined that the same union fund involved here is a program against which the plaintiff is entitled to apply its COB provisions, *Blue Cross of Northeast Ohio v. Taylor* (Dec. 11, 1980), Cuyahoga App. Nos. 41899, 41900, 41901, and 41923, unreported, at 5-6.

The relevant clauses in the BCNO contract with the defendants are:

"Section 3. *Effect on Benefits*

"a. This provision shall apply in determining the benefits as to a person covered under this Contract for any Claim Determination Period if, for the Allowable Benefits incurred as to such person during such period, the sum of

"(1) the benefits that would be payable under this Contract in the absence of this provision, and

"(2) the benefits that would be payable under all other Programs in the absence therein of contractual terms of similar purpose to this provision

"would exceed such Allowable Benefits

"b. As to any Claim Determination Period with respect to which this provision is applicable, the benefits that would be payable under this Contract in the absence of this provision for the Allowable Benefits incurred as to such person during such Claim Determination Period shall be reduced to the extent necessary so that the sum of such reduced benefits and all the benefits payable for such Allowable Benefits under all other Programs, except as provided in item c of this Section 3 shall not exceed the total of such Allowable Benefits. *Benefits payable under another Program include the benefits that would have been payable had claim been duly made therefor.* [Emphasis added.]

"* * *

"Section 7. *Right of Recovery*

"a. Whenever payments have been made by the Plan with respect to

Allowable Benefits in a total amount, at any time, in excess of the maximum amount of payment necessary at that time to satisfy the intent of this provision, the Plan irrespective of to whom paid shall have the right to recover such payments, to the extent of such excess, from among one or more of the following as the Plan shall determine: any person to or for or with respect to whom such payments were made, any insurance companies, any other organizations.

"b. The subscriber, for himself or herself and on behalf of his or her dependents, shall, upon request, execute and deliver such instruments and papers as may be required and do whatever else is necessary to secure such rights to the Plan."

These contract provisions clearly authorize recovery of the $1,227.55 received by defendant Furino from the union fund, *Blue Cross of Northeast Ohio* v. *Taylor, supra,* at 5-7. However, the *Taylor* case did not address the issue of the plaintiff's right to recover amounts payable to the defendants under the union fund agreement but not claimed or received by the union members. See *Taylor, supra,* at 4.

The defendants argue that a resolution adopted by the trustees of the union fund relieves them of the obligation to file for union fund benefits and concomitantly entitles them to complete coverage by the plaintiff. That resolution, passed on February 21, 1979, provides in part:

"WHEREAS, it has come to our attention that payments made by our H & W Fund to our member have been claimed to be subject to various coordination of benefit clauses contained in other Medical and/or Health and Welfare Insurance that our member or some other person in our member family may have in existence at the time of our payment.

"Most of these instances occur when our member or his/or her spouse is covered by a Blue Cross plan at his or her place of employment.

"* * *

"WHEREAS, it was never the intention of the members or the Board of Trustee[s] that any payment made to a member be or in any way subject to the claim of any other type of insurance that our member may or may not have. It has always been the position of the Trustees and the members that the payments made by the Fund to our members is nothing more than the return to our member of his own money.

"It is therefore,

"RESOLVED, that if the occasion arises wherein any other Insurance Group of any type makes claim to an amount due our member, this member is herein granted the right to elect not to receive any amount that may be due him or her from the Fund."

The union resolution could not nullify the conditions imposed on the defendants by their BCNO contract. When they did not make applications available to them for reimbursement from the union fund they foreclosed their rights against BCNO.

Defendants argue also that no request was made of them under Section 7(b) of the BCNO contract to assist BCNO "in securing their rights under the coordination of benefits rider." This omission, it is claimed, prevented the defendants from making timely applications for benefits under the union plan. This claim is not exemplified in the record. Therefore, it is not substantiated and need not be considered. App. R. 12(A).

Assignments of Error Nos. I and II lack merit.

## IV

The judgments are affirmed.

*Judgments affirmed.*

Parrino and Nahra, JJ., concur.